**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**CHRISTOPHER A. CAGE**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

**FILED**
May 07 2013, 9:37 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TRACY LAWRENCE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A02-1206-CR-524 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Thomas Newman, Jr., Judge
Cause No. 48C03-1110-FA-1989

**May 7, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Tracy Lawrence repeatedly molested the young daughter of a close friend over a period of years and was convicted of class A felony child molesting and class A felony attempted child molesting. The trial court sentenced him to an aggregate one-hundred-year term. He now appeals his sentence, challenging the trial court's treatment of certain aggravating factors and claiming that his sentence is inappropriate in light of the nature of the offenses and his character. Finding that the trial court neither abused its discretion nor imposed an inappropriate sentence, we affirm.

**Facts and Procedural History**

In 2006, Lawrence met A.T. ("Mother") and her children. He became close friends with the family and often babysat for the children. The children referred to him as their uncle, and he often helped them with homework or chores. Mother's daughter, I.T., would sometimes stay overnight alone at Lawrence's home. At some point in 2007, Lawrence began molesting I.T., who was about five years old.

On October 26, 2011, Lawrence was at Mother's house and was helping clean the refrigerator. Mother was not home, and the grandmother left the house to take two of the children to a friend's house. I.T.'s uncle, T.T., was out in the garage, and I.T. was inside the house alone with Lawrence. Lawrence pushed her onto a bed and began kissing her and taking her clothes off. He attempted to put his penis into her vagina, when T.T. came inside the house and called Lawrence's name. Lawrence got up quickly and met T.T., who wondered why he was still there. T.T. then noticed I.T., who was standing in the bedroom,

2

disheveled and shaking. Without saying anything further to Lawrence, T.T. told I.T. to get her coat and leave the house with him.

Lawrence went to the Anderson police station and reported that he had not molested a nine-year-old girl. Meanwhile, I.T. told T.T. that Lawrence had pulled down her pants and fondled her. When they returned to the house and told her grandmother what had happened, Lawrence pulled up and accused them of lying and forcing I.T. to make false allegations.

I.T. later reported that Lawrence had repeatedly touched her vagina, nipples, anus, and mouth with his penis, mouth, tongue, and hands. She said that he would put his penis partly into her vagina and butt, and that whenever he put his privates in her privates, it "kinda hurt[]." Tr. at 458. She said that he would force her to put her mouth on his penis, that "green stuff [would come] out of his penis," and that he would tell her to swallow it so that her nipples would grow. *Id.* at 342, 344, 457, 477. She said that it looked like "snot" and that the incidents happened "too many times to count." *Id.* at 354, 356, 458. She also reported that Lawrence placed his tongue and finger in her vagina. *Id.* at 341. DNA testing from I.T.'s neck and underwear produced results indicating the presence of saliva consistent with Lawrence's genetic material.

The State charged Lawrence with class A felony child molesting for acts perpetrated against I.T. between January 2009 and October 2011. The State also charged him with class A felony attempted child molesting for the incident that occurred on October 26, 2011. A jury convicted him as charged. During his sentencing hearing, Lawrence unleashed a series of profanity-laced accusations against I.T., her family, certain witnesses, the trial court, the

3

attorneys, and law enforcement. At the close of the hearing, the trial court sentenced Lawrence to two consecutive fifty-year terms, citing as aggravators (1) Lawrence's "position of trust" concerning the victim; (2) his criminal history, "which includes an Illinois child molesting conviction" that placed him on the "Sexual Predator" list, subjecting him to lifetime annual registry requirements; (3) the "young age" of his victim (between five and nine years old); (4) the protracted period of time over which he "continued" to molest her (between two and four years); and (5) his "demeanor and behavior in the courtroom." *Id*. at 712. Lawrence now appeals his sentence. Additional facts will be provided as necessary.

**Discussion and Decision**

*I. Aggravating Circumstances*

Sentencing decisions rest within the sound discretion of the trial court and, as long as a sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. The trial court sentenced Lawrence to consecutive fifty-year terms for his two class A felony convictions, each of which carries a sentencing range of twenty to fifty years. Ind. Code § 35-50-2-4. Thus, his sentence is within the statutory range, and we review it for an abuse of discretion.

Lawrence first contends that the trial court erred in not specifically listing or explaining the aggravators in its written sentencing statement. One way that a trial court may abuse its discretion is if the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration. *Anglemyer*, 868 N.E.2d at 491. In its sentencing

4

order, the trial court stated that it "now finds aggravating circumstances to exist, as set out in open court[.]" Appellant's App. at 10. Thus, the order incorporates the aggravators as set out by the court during sentencing, i.e., Lawrence's prior child molesting conviction; his violation of his position of trust; the young age of his victim; his innumerable molestations of I.T. over a protracted period of time; and his behavior during sentencing. We conclude that the trial court adequately specified the aggravators that formed the basis for its decision to enhance Lawrence's sentence.

Lawrence also challenges the trial court's designation and treatment of certain aggravators in imposing sentence. In this vein, we first note that his challenges concerning the trial court's treatment of his criminal history and the violation of his position of trust speak in terms of the weight assigned to these factors. We remind him that within the new sentencing framework, the relative weight or value assignable to sentencing factors is not subject to review on direct appeal. *Anglemyer*, 868 N.E.2d at 491.

Lawrence also contends that the trial court improperly used his courtroom demeanor and conduct to enhance his sentence. He argues that his conduct merely reflected a lack of remorse that is consistent with his assertions of innocence. We disagree. At sentencing, the trial court afforded him the opportunity to make a statement. His statement spans twenty pages of the sentencing transcript and consists of persistent deflections of blame interspersed with profanity; degrading statements and accusations regarding both defense counsel and the prosecutor; statements mocking his young victim; and numerous accusations of lying against the victim, her family members, the police, and an unrelated witness. To the extent

5

Lawrence audaciously asserts that the trial court failed to specify which exact behavior and demeanor it found inappropriate, the answer is simple: all of it. He was abusive of nearly every person in the courtroom, including the trial court. In short, the record supports the trial court's treatment of his courtroom conduct as an aggravator, and we therefore find no abuse of discretion in this regard.

## II. Inappropriateness of Sentence

Lawrence also asks that we review and revise his sentence under Indiana Appellate Rule 7(B), which states that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [this] Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." When a defendant requests appellate review and revision of his sentence, we have the power to affirm, reduce, or increase the sentence. *Akard v. State*, 937 N.E.2d 811, 813 (Ind. 2010). Our review focuses on the aggregate sentence rather than on the number of counts, whether they are to be served concurrently or consecutively, or the length of sentence on an individual count. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). In conducting our review, we do not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is "inappropriate." *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). A defendant bears the burden of persuading this Court that his sentence meets the inappropriateness standard. *Anglemyer*, 868 N.E.2d at 490; *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

Lawrence asserts that his offenses were not the worst of the worst and therefore did

not deserve such a severe sentence. We disagree. In considering the nature of a defendant's offense, "the advisory sentence is the starting point the Legislature has selected as an appropriate sentence." *Anglemyer*, 868 N.E.2d at 494. Lawrence was sentenced to consecutive maximum fifty-year terms for his two class A felony convictions, each of which carries a thirty-year advisory term. Ind. Code § 35-50-2-4.

Lawrence's acts were both heinous and numerous. After years of abuse, nine-year-old I.T. described in graphic detail the various sex acts to which Lawrence had subjected her. The abuse ended only after her uncle interrupted Lawrence in yet another attempt to molest her. To the extent Lawrence argues that his relationship with I.T. was beneficial because he helped her with homework and housework, we find it warped logic that a caregiver would garner the trust of a child, use her for his own benefit, and then claim that she benefitted as well. Simply put, helping I.T. with her homework did not entitle Lawrence to help himself to I.T.

Moreover, we find equally offensive Lawrence's attempt to diminish the seriousness of his offenses by claiming that I.T. suffered no serious physical harm. The disheveled and partially clothed I.T. was shaking when her uncle found her. The fact that a subsequent medical exam did not indicate immediate physical trauma to I.T.'s genitals is consistent with the fact that Lawrence was unable to complete an act involving penetration on the day that her uncle discovered the abuse; I.T.'s testimony that the abuse had been going on for years; and the various ways in which Lawrence unlawfully touched her during the years of abuse. Finally, it is obvious that the damage that I.T. suffered and will continue to suffer is not

7

limited to physical damage; she will also suffer the emotional scars that come with losing her innocence at the hands of someone masquerading as her protector.[1]

Finally, Lawrence's criminal history, failure to learn from his previous mistakes, breach of trust, and conduct at sentencing all bespeak an extremely unsavory character. His record includes a felony drug conviction and a prior child molesting offense for which he was determined to be a sexual predator, subject to lifetime registration requirements. His failure to respond to more lenient sentencing options such as parole demonstrates a failure to take responsibility for and learn from his past transgressions. He befriended I.T.'s mother and gained the trust normally associated with a family member. This resulted in his being left alone with I.T., providing him numerous opportunities to molest her without being detected. The supposed kinship Lawrence felt toward the family turned to animus during sentencing, when he repeatedly proclaimed that I.T. and her family were liars. His lengthy diatribe simply confirmed the trial court's negative impressions regarding his character. Not only did he fail to show remorse, but he also mocked I.T. and spewed vitriolic statements aimed at her family and the officers of the court. *See* Tr. at 692 ("Let me see you take a f\*\*king shank to the face, Mr. Prosecutor. Mrs. Prosecutor."). After the trial court pronounced sentence, Lawrence mocked the court and his victim, exclaiming, "Think about that. A hundred years

---

[1] Lawrence argues that he never harmed I.T. physically and that his "positive influences" and "fulfillment of a role that was lacking in the children's lives" should be considered to offset his violation of trust. Appellant's Br. at 11. We find these arguments offensive and note that research studies have shown that sexually abused children suffer not only psychological damage, but also physical brain damage. *See*, *e.g.*, J. Douglas Bremner, M.D., *The Invisible Epidemic: Post-Traumatic Stress Disorder, Memory and the Brain* (March 2000), http://www.pandys.org/articles/invisibleepidemic.html.

because you want to f**king lie. Because you a nasty b**ches lie. Nasty, unorthodox, f**k b**ches lie. They lie. Nasty f**k b**ches and they lie. A hundred years because of f**king lies." *Id*. at 713-14. When the attending deputy instructed Lawrence to be quiet, Lawrence retorted, "Come on man. Be quiet, for what? What are you going to do give me another hundred years? Huh? Is he going to give me another hundred year [sic]? Be quiet. F**k that. He going to give me another hundred years? No, he not." *Id*. at 714. Simply put, Lawrence's courtroom conduct belies his claim that his character compels a shorter sentence.

Based on the foregoing, we find that Lawrence has failed to meet his burden of demonstrating that his sentence is inappropriate. Accordingly, we affirm.

Affirmed.

ROBB, C.J., and FRIEDLANDER, J., concur.